**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ANTHONY SOLOMON, | ) | CASE NO. 5:25-cv-01977 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | CARMEN E. HENDERSON |
| | ) | |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | **MEMORANDUM AND ORDER** |
| SECURITY | ) | |
| Defendant, | ) | |
| | ) | |

**I. Introduction**

Plaintiff, Anthony Solomon ("Solomon" or "Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying his application for Supplemental Security Income ("SSI"). This matter is before me by consent of the parties under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (ECF No. 7). For the reasons set forth below, the Court OVERRULES Claimant's Statement of Errors and AFFIRMS the Commissioner's decision.

**II. Procedural History**

On October 12, 2022[1], Claimant filed an application for SSI, alleging a disability onset date of October 12, 2021, and claiming he was disabled due to peripheral neuropathy, bilateral carpal tunnel syndrome, muscle tissue loss in his feet, nerve damage in his neck and back, and a pinched lumbar. (ECF No. 8, PageID #: 113, 239–42, 273). The applications were denied initially and upon reconsideration, and Solomon requested a hearing before an administrative law judge

---

[1] Although the Social Security Administration received Solomon's application on January 20, 2023, his protected filing date was October 12, 2022.

1

("ALJ"). (ECF No. 8, PageID #: 142, 151). On July 10, 2024, an ALJ held a hearing, during which Solomon, represented by counsel, and an impartial vocational expert testified. (ECF No. 8, PageID #: 63–94). On September 4, 2024, the ALJ issued a written decision finding Claimant was not disabled. (ECF No. 8, PageID #: 58). The ALJ's decision became final on July 28, 2025, when the Appeals Council declined further review. (ECF No. 8, PageID #: 22–24).

Moreover, Claimant previously filed an application for supplemental social security income, alleging disability beginning August 15, 2020, which was denied by an ALJ in a written decision on June 21, 2021. (ECF No. 8, PageID #: 98).

On September 18, 2025, Claimant filed the present Complaint to challenge the Commissioner's final decision. (ECF No. 1). The parties have completed briefing in this case. (ECF Nos. 9, 10). Claimant asserts the following assignments of error:

(1) The ALJ's finding that Mr. Solomon now retains the physical capacity for light activity is in conflict with AR 21-1 (6), a past ALJ determination, and is not supported by substantial evidence; and

(2) The ALJ's mental residual capacity assessment is legally insufficient and lacks the support of substantial evidence.

(ECF No. 9 at 1).

## III. Background

### A. Relevant Hearing Testimony

The ALJ summarized the relevant testimony from Claimant's hearing:

At the hearing, the claimant indicated he has not received a lot of medical treatment and has just been taking medications. He states he cannot feel his feet or fingers. He stated he does not want to try surgery for carpal tunnel, and he wears wrist splints and can grab things a little easier. He states he is constantly depressed and does not want to talk or be seen and stays locked up, but he does not have any treatment or take any medications. He spends most of his day watching TV (citation

omitted).

(ECF No. 8, PageID #: 50).

## B. Relevant Medical Evidence

The ALJ also summarized Claimant's health records and symptoms:

He states neuropathy limits standing or sitting for periods of time and loss of balance (B5E). He stated he cannot perform tasks such as twisting, bending, or lifting heavy objects in a timely manner. Pain due to the wrong movement could cause him to lose his balance or roll his ankles. Sensitivity to fingers/feet/toes/hands feels like needles, and painful wrist motion (B6E).

[T]here are diagnostic findings which are overall mild, showing mild interverbal disc space narrowing at level L5-S1 and lesions at the level of carpal tunnels and right Guyon's canal, and peripheral neuropathy; however, he has had very minimal treatment. He has wrist splints for carpal tunnel, and he has been maintained on etodolac and cyclobenzaprine for years, which are reportedly helpful. He was taking gabapentin, which was helpful for neuropathy, but he switched to pregabalin due to reported psychiatric side effects. There has been no other treatment, and he only recently had a neurological consultative, with entirely normal examination, and referral for EMG/NCS of right upper and lower extremities (8F). The records consistently indicate he has full range of motion, intact strength, intact DTRs, intact coordination, and intact sensation, and other than at the CE, he has a normal gait (see B2F/2-3; B1F/34; B6F/4; B7F/4; B8F/3-4). Records show he is able to handle self-care and personal hygiene, perform simple maintenance, prepare meals, pay bills, go to doctor's appointments, take medications, shop, drive, read, watch TV, manage funds, handle his medical care (B6E; B1F; B4F). The objective records, including mild diagnostic findings, overall normal physical exams, and the claimant's daily activities support a range of light exertion, with additional restrictions to address carpal tunnel, neuropathy, and neck and back pain, including occasional operation of foot controls, frequent handling and fingering, occasional climbing ramps/stairs, balancing, stooping, kneeling, crouching, and crawling, frequent exposure to humidity, wetness, extreme cold and vibration, and no climbing ladders, ropes, or scaffolds or work at unprotected heights, with moving mechanical parts, or operating a motor vehicle. He did not allege psychiatric impairments, nor is there a psychiatric impairment noted by the prior ALJ in 2021. However, when he saw his PCP in December 2021 to request paperwork indicating he could not work for purposes of child support, he reported anxiety and panic attack with difficulty relaxing (B1F/7-10), and he had a telehealth visit with Psychiatry for intake that month stating he was seeking medication to help with anxiety and sleep. However, his MSE is normal other than depressed mood, and he never returned for any treatment. He has not had any mental health treatment, including medications or therapy, during the time period at issue. Further, there are

3

no complaints of anxiety or mood issues noted in the treatment records since that intake visit in December 2021. He did have a psychological consultative evaluation in July 2023, with reported history of chronic depression and reported anxiety associated with fear of dying and his relationship with his sons and feelings of sadness that he was unable to raise his two sons because their mothers denied him shared parenting or visitation. He reported some issues with isolation, stating he gets angry/grouchy and snaps at others when in pain. However, he reports that his lives with his grandmother and has a girlfriend with whom he stays several days a week. He drives and is able to go grocery shopping, and he also lives with his brother, and his cousins come over at times to help with some housekeeping tasks (B4F). The treatment records do not document any issues with interaction or behavior during exams, and records note he can get along with others, spend time with friends and family, deal appropriately with authority, and live with others, and he is able to follow instructions from healthcare providers, respond to questions, has intact memory and concentration, has appropriate grooming and hygiene, is described as pleasant and cooperative, had good interactions, and appeared comfortable during appointments (B6E; B1F; B5F; B6F; B7F; B8F), and the consultative examiner notes adequate grooming, satisfactory eye contact, cooperative, euthymic affect, no signs of anxiety (B4F). There is no indication of more than mild limitations in areas of mental functioning, other than moderate limitations in concentration, persistence, and pace. Although he presented with no limitations in understanding, remembering, or carrying out tasks at the consultative exam, given the claimant's history of 9th grade education, as well as issues with pain, he is restricted to routine instructions and no production rate pace.

The earliest medical record in the file is a telehealth visit with his PCP to refill medications in December 2020. He reported popping and pain with turning his neck and low back/tailbone pain, and pain in his toes. Records note neve conduction testing in July 2020 showed mild peripheral neuropathy. He is treated with etodolac, cyclobenzaprine, and gabapentin, and he was referred to Orthopedics for his back and neck. Mild intermittent asthma is managed on Ventolin and Singulair (B1F/2). However, there are no records of follow up with Orthopedics, and he returned to his PCP in December 2021 for medication refill. He requested paperwork for the court to show he could not work, for purposes of child support. He stated his back pain started when he was shopping at the grocery store, and he felt a sharp back pain and nerve pain while stooped over and lifting. Pain involves his back and neck. He endorses pain radiating to his bilateral lower extremities. He also reported anxiety and panic attack with difficulty relaxing, although he had not seen Psychiatry at CSS, and he was referred to Psychiatry, and he is continued on medications and advised of a healthy lifestyle (B1F/7-10). He had a telehealth visit for Psychiatry intake that month stating he was seeking medication to help with anxiety and sleep. MSE notes good hygiene, pleasant demeanor, unremarkable thought content, depressed mood, unremarkable speech, full affect, unremarkable perception, unremarkable memory and orientation and fair judgment. He reported being good with his hands and building things and putting things together and being a good teacher and good with babies and children. He was to return in January 2022

4

to she the psychiatrist (B1F/16). However, there are no records of follow up with Psychiatry, nor any further mention of mood issues or anxiety in any treatment records since that time.

He returned to his PCP in May 2022 but did not report issues with anxiety or mood. He reported ongoing pain. He stated gabapentin does not completely take away the pain, but it will ease the pressure he feels. He also continued to take cyclobenzaprine and etodolac. Singulair and Ventolin work well for asthma. He was referred to Neurology for neuropathy (B1F/18,21). Examination in August 2022 notes full range of motion, normal muscles strength, good strength in resistance training, intact sensation, no focal deficits, steady gait, fine and gross movements intact, and no significant EPS/dystonia/akathisia (B1F/29). He had a nerve conduction test scheduled for August 27, 2022 (B1F/27), although at follow up on September 30, 2022, he still had not seen Neurology or had the nerve conduction study. Asthma is controlled. His exam is again normal (B1F/32,34). Records from February 2023 note nerve conduction study in October 2022 showed minimal findings in both APB muscles and right ADM muscle, suggesting developing lesions at the level of carpal tunnels and right Guyon's canal, as well as peripheral neuropathy, and he is treated with wrist splints. He reports gabapentin helps control his neuropathy well, but it makes him drowsy. He states neuropathy occurs intermittently. There is no mention of anxiety or mood issues (B1F/41).

At a consultative exam on June 21, 2023, the claimant indicated he has back pain with peripheral neuropathy, as well as carpal tunnel in both hands, muscle tissue loss in feet, nerve damage in neck and back, and pinched lumbar. He reports back pain started following a lifting injury in 2019 when he bent over to pick up an object and heard a pop, and ever since, pain has been terrible. He states he feels as if someone was pressing a baseball bat into the back and probing. He takes medications that eases the tightness but helps him relax. He states sitting down more than 20 minutes makes pain worse. He reports he stopped working after back pain and neuropathy in 2019. He is alert and oriented and follows commands. Exam notes CN 2-12 intact; tone and bulk are normal for age and build; no tremors; normal 5/5 strength; full range of motion throughout; DTRs +2/4 globally in upper and lower extremities. The examiner notes there is leftward elevation of the scapular region compared to a depressed right side owing to a left thoracic curvature; percussion tenderness over the mid thoracic spine; depression of right shoulder compared to left upon ambulating and a neuropathic appearing gait with mild disequilibrium predisposition to falls, with arm swing normal. The examiner notes chronic back pain that in part is due at least as likely as not to a probable levothoracic scoliosis (B2F). Lumbar x-rays showed mild intervertebral disc space narrowing at level L5-S1 (B3F/1).

At a psychological consultative evaluation on July 10, 2023, the claimant reports he is no longer able to maintain employment in the community because "lower lumbar disc problems, nerve damage in neck and back and disc is pinched causing shooting pain in back." He reports peripheral neuropathy and can't keep balance

5

and carpal tunnel. He arrived with his girlfriend. He has two sons by previous relationships. He lives with his grandmother who is 95 and his older brother. He reports difficulty getting along with others while in school and reports sadness because he was not able to raise sons. He reports he doesn't want to associate with anyone and ongoing social isolation. He states he gets grouchy and snaps at others and gets angry when in pain. He reports he feels people are out to get him. He is estranged from youngest son and has no relationship with oldest son. In terms of ADLs, he reports he prepares simple meals. He can operate a microwave. He does not have responsibilities in households. He states he is only able to carry a small bag of trash. He is able to handle grocery shopping and would be able to pay bills and count money. His girlfriend does his laundry. He states he sometimes handles errands such as picking up his medications. He stays with his girlfriend 2-3 times a week. He maintains a driver's license and transports his girlfriend to various locations frequently. MSE notes grooming intact, speech relevant, able to speak in normal voice, cooperative, evidenced signs of tearfulness, mood subdued, affect euthymic. He recalled 6 digits forward and 4 backwards. Insight and judgment with no significant limitations. Diagnoses include persistent depressive disorder and somatic symptom disorder with predominant pain (B3E).

At follow up with his PCP in September 2023, he reports gabapentin helps with neuropathy in hands and feet, but he wanted to switch the medication because it makes him aggressive and angry, and he was switched to Lyrica. He stated etodolac 500mg and cyclobenzaprine 5mg work well for cervicalgia. Singulair works really well for asthma, and he only uses Ventolin PRN (B5F/6). However, at follow up in October 2023, he stated he had not yet started the Lyrica. Records note he had not yet seen a specialist. He may have tried an epidural injection at one point, but unsure if he did this. Exam notes normal musculoskeletal exam with full range of motion, stability, and intact strength and tone (B6F/2,4). In January 2024, he returned to have forms filled out for lawyers and med refills. He has normal musculoskeletal exam with full range of motion and normal neurologic exam with steady gait and no focal deficits. It is unclear if he ever started Lyrica, but it was prescribed (B7F/4,6).

He finally saw a neurologist on August 1, 2024 for consultation for back pain, numbness, and tingling. He reported pain from the feet up to his back and mid back, numbness/tingling in both feet and lateral thigh, neck pain radiating to hands, and imbalance. There is reference to lumbar MRI in 2021 showing mild neuroforaminal stenosis at the level of L5 and S1 bilaterally. Exam notes he is sitting comfortably in no acute distress, with supple neck with no pain or tenderness, intact pulses, no scoliosis, lordosis, or kyphosis, and lungs are clear with normal respiratory effort. Neurological exam notes he is alert and oriented, cooperative, with full concentration and attention span, intact recent and remote memory, fluent language with intact comprehension and expression, and normal fund of knowledge. Cranial nerves are intact, muscle tone is normal in both upper and lower extremities, manual muscle testing notes 5/5 strength in all areas bilaterally, reflexes are 2+ bilaterally, and there are no tremors, negative Hoffman, negative Babinski, and no clonus, and

6

coordination and sensation are intact throughout. His gait is normal stride length and arm swing and base width; he is able to toe and heel walk, tandem walk, and squat, and Romberg is negative. Given his reports of pain, numbness, and tingling, EMG/NCS of the right upper and lower extremities were ordered (B8F/1-5).

 (ECF No. 8, PageID #: 50–54).

## IV.    The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

2. The claimant has the following severe impairments: carpal tunnel syndrome bilateral, asthma, peripheral neuropathy, cervical degenerative disc disease, depressive disorder, somatic symptom disorder (20 CFR 416.920(c)).

4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except he can occasionally operate foot controls bilaterally. He can frequently handle and finger with the bilateral upper extremities. He can climb ramps and stairs occasionally, never climb ladders, ropes, or scaffolds, balance occasionally, stoop occasionally, kneel occasionally, crouch occasionally, crawl occasionally. The claimant can never work at unprotected heights, never with moving mechanical parts, and never operating a motor vehicle. He can work in humidity and wetness frequently, in extreme cold frequently, in vibration frequently. The claimant is able to follow simple instructions but not at a production or assembly line pace.

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).

10. The claimant has not been under a disability, as defined in the Social Security Act, since October 12, 2022, the date the application was filed (20 CFR 416.920(g)).

(ECF No. 8, PageID #: 48, 50, 57).

## V. Law & Analysis

### A.  Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g).

"[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

## B. Standard for Disability

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has

the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

### C. Discussion

Claimant raises two issues on appeal. First, he argues that the ALJ erred in finding Solomon can perform a range of light work activity due to an improper application of Sixth Circuit precedent and a failure to build a logical bridge between the current evidence and the RFC. (ECF No. 9 at 9–16). Next, Claimant argues that the ALJ erred in finding that, "[Claimant] had the mental residual functional capacity to follow simple instructions but not at a production or assembly line pace is premised on legal error and is not supported by substantial evidence." (ECF No. 9 at 16–18). The Court addresses each issue below.

#### 1. The ALJ Did Not Err in his Evaluation of the Prior ALJ Decision Nor in his Adherence to *Earley.*

Specifically, Claimant contends that, "[t]he ALJ erred in reviewing the prior RFC determination, in violation of AR 24-1(6) and Sixth Circuit precedent." (ECF No. 9 at 11). Claimant's argument, essentially, is that the ALJ failed to comply with the Sixth Circuit's decision in *Earley v. Comm'r. of Soc. Sec.*, 893 F.3d 929 (6th Cir. 2018), which clarified the Sixth Circuit's previous decisions in *Drummond v. Comm'r. of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997), and *Dennard v. Sec'y of Health and Hum. Services*, 907 F.2d 598 (6th Cir. 1990).

Commissioner responds that the ALJ complied with *Earley* and AR 24-1(6) as he, "considered whether there was new and material evidence that demonstrated a change in his condition… [and] concluded that Plaintiff submitted new evidence, which showed a new and material change in circumstances beginning October 12, 2022, the date he applied for benefits."

(ECF No. 10 at 6); *see Earley,* 893 F.3d at 929. Commissioner also argues that the ALJ complied with *Earley* as he gave a "fresh look" to the new evidence submitted by Claimant "while being 'mindful' of the prior ALJ decision." (ECF No. 10 at 6); *see Earley,* 893 F.3d at 929. The Court agrees with the Commissioner.

To begin, the ALJ could not have erred in his application of AR 24-1(6) as the Acquiescence Ruling has an effective date of December 2, 2024, and the ALJ issued his decision on September 4, 2024. *See* SSA Acquiescence Ruling 24-1(6), 89 Fed. Reg. 92992-02, 2024 WL 4870750. Therefore, the Court will not consider this argument. Thus, the Court turns to the ALJ's adherence to the Sixth Circuit's holding in *Earley*.

In *Earley*, the Sixth Circuit held that prior findings made at the ALJ hearing or AC level should be considered in the adjudication of disability for an unadjudicated period in a subsequent claim: "it is fair for an administrative law judge to take the view that, absent new and additional evidence, the first administrative law judge's findings are a legitimate, albeit not binding, consideration in reviewing a second application." *Earley*, 893 F.3d at 933. *Earley* explains that an adjudicator honors the principles of res judicata "by considering what an earlier judge found with respect to a later application and by considering that earlier record." *Id.* This does not mean that an ALJ reviewing a second application must presume that a prior disability decision will prevail in the subsequent application. *Dennis D. v. Comm'r. of Soc. Sec.*, 2024 WL 1193662, at *4 (6th Cir. Mar. 20, 2024).

In this case, as Claimant notes, the ALJ acknowledged the prior agency decision:

On September 24, 2021, a hearing was held before an Administrative Law Judge (ALJ) on a prior application for supplemental security income filed on October 29, 2020. The claimant alleged a period of disability beginning August 15, 2020. On October 21, 2021, the ALJ issued a decision finding that the claimant was not disabled under the Social Security Act during the requested period (B1A). The

10

claimant requested review of the ALJ decision by the Appeals Council; however, said request was denied on August 18, 2022 (B3A/1).

(ECF No. 8, PageID #: 45) (ECF No. 9 at 11).

The ALJ then outlined the standard of review for considering the prior ALJ decision:

> The prior finding concerning the claimant's residual functional capacity is binding absent evidence of an improvement or change in condition since the prior hearing. *See*, *Drummond v*[.] *Commissioner of Social Security*, 126 F.3d 837 (6th Cir. 1997), Acquiescence Ruling 98-4(6) (SSA must adopt a finding of a claimant's residual functional capacity or other finding required under the applicable sequential evaluation process for determining disability, made in the final decision by an ALJ or Appeals Council on a prior disability claim unless new and additional evidence or changed circumstances provide a basis for a different finding of the claimant's residual functional capacity): *Dennard v*[.] *Secretary of Health and Human Services*, 907 F.2d 598 (6th Cir. 1990): Acquiescence Rulings 98-3(6) (SSA must adopt a finding of the demands of a claimant's past relevant work made in the final decision by the ALJ or Appeals Council on the prior disability claim).

(ECF No. 8, PageID #: 45–46).

Although, the ALJ cited the standard set forth in *Drummond*, "a reviewing court should look beyond any superficial reference to *Drummond* to determine whether the subject claimant in fact received a fair administrative hearing in adherence to the *Earley* opinion." *Troxell v. Kijakazi*, No. 1:20-0016, 2021 WL 4143938, at *5 (M.D. Tenn. Aug. 16, 2021), *report and recommendation adopted*, 2021 WL 4133963 (M.D. Tenn. Sept. 10, 2021); *see also Eric H. v. Comm'r. of Soc. Sec.*, 2025 WL 2374183, at *4 (W.D. Mich. July 29, 2025) ("…[A] court should not automatically assume that an ALJ's reference to *Drummond* means that he or she uncritically adopted the prior ALJs findings.") (emphasis in original). Moreover, in *Dennis D. v. Commissioner of Soc. Sec*, where the ALJ erroneously stated that the previous RFC determination from the prior decision was "binding," the court found that the ALJ complied with *Earley* because the ALJ's analysis showed that he did not consider himself bound by the prior ALJ's RFC finding. 2024 WL 1193662 (6th Cir. Mar. 20, 2024).

11

Here, despite the ALJ's references to *Drummond*, no evidence in the record reveals that the ALJ believed that he was bound by the prior ALJ's determinations. For example, on the first page of the decision, the ALJ referenced *Drummond* and the related Acquiescence Rulings, yet stated that "[t]he claimant submitted new evidence, which shows a new and material change in circumstances beginning October 12, 2022. As such, the undersigned is *not bound by the findings of the previous ALJ* as of that date." (ECF No. 8, PageID #: 46) (emphasis added). Moreover, throughout his opinion the ALJ considered the medical evidence created after Claimant's alleged onset date of October 12, 2021. (ECF No. 8, PageID #: 48) ("[Claimant's] Neurology consultation in August 2024 notes entirely normal exam finding."); *Id.* at PageID #: 51 ("[Claimant's] MSE is normal other than depressed mood, and he never returned for any treatment. He has not had any mental health treatment, including medications or therapy, during the time period at issue. Further, there are no complaints of anxiety or mood issues noted in the treatment records since that intake visit in December 2021."); *Id.* at PageID #: 52 ("[Claimant] returned to his PCP in May 2022 but did not report issues with anxiety or mood."); *Id.* at PageID #: 52 ("Examination in August 2022 notes full range of motion, normal muscles strength, good strength in resistance training, intact sensation, no focal deficits, steady gait, fine and gross movements intact, and no significant EPS/dystonia/akathisia."); *Id.* at PageID #: 54 ("Neurological exam notes he is alert and oriented, cooperative, with full concentration and attention span, intact recent and remote memory, fluent language with intact comprehension and expression, and normal fund of knowledge. Cranial nerves are intact, muscle tone is normal in both upper and lower extremities, manual muscle testing notes 5/5 strength in all areas bilaterally, reflexes are 2+ bilaterally, and there are no tremors, negative Hoffman, negative Babinski, and no clonus, and coordination and sensation are intact throughout.").

And the ALJ noted the new objective medical evidence in the record, including overall normal exams, consistently showing full range of motion, intact strength, intact DTRs, intact coordination, and intact sensation did not support a finding of sedentary work. (ECF No. 8, PageID #: 55, 378, 392–93, 422, 430). The ALJ then formulated a new RFC limiting Claimant to light work. *Id.* at PageID #: 50. Therefore, despite his reference to *Drummond*, the ALJ's discussion indicates that he complied with *Earley* by giving Claimant's 2022 application a "fresh look" in the light of the new evidence Claimant presented.

Yet despite the ALJ's detailed analysis of Claimant's medical records and resulting RFC determination, Claimant believes the ALJ erred because "the ALJ neither identified a new and material change in circumstances nor explained why the prior ALJ's residual functional capacity finding was rejected." (ECF No. 9 at 11). This argument lacks merit. As discussed above, in his formulation of the new RFC, the ALJ considered numerous new medical records from Claimant's alleged on set date of October 12, 2021, until issuing his decision on September 4, 2024. Moreover, "it is the responsibility of the ALJ reviewing the claim for the later unadjudicated period to determine how much weight to accord both the prior decision and any newly submitted evidence." *Dennis D.*, 2024 WL 1193662, at *4. Therefore, not only did the ALJ properly adhere to the *Earley* standard, the ALJ provided a logical bridge between his conclusions, the new medical evidence, and nonmedical evidence in the record, in formulating Solomon's RFC and light work limitation.

### 2. The ALJ Properly Evaluated the Opinion Evidence for Supportability and Consistency.

Claimant also argues the ALJ's analysis of Dr. Saghafi, Dr. Bard, and the Prior Administrative Medical Findings (PAMFs) lacked supportability and consistency, therefore his

RFC determination lacked substantial evidence requiring remand. (ECF No. 9 at 13–16). The Court addresses these contentions below.

At Step Four, the ALJ must determine a claimant's RFC by considering all relevant medical and other evidence. 20 C.F.R. §§ 404.1520(e). For claims filed after March 27, 2017, such as this one, the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." C.F.R. § 404.1520c(a). Still, an ALJ must "articulate how [she] considered the medical opinions and prior administrative medical findings" in adjudicating a claim. 20 C.F.R. § 404.1520c(a). Medical source opinions are evaluated using the factors listed in 20 C.F.R. § 404.1520c(c).

"Under Social Security regulations, an ALJ weighing medical opinions must consider two factors: supportability and consistency. The supportability analysis examines 'the extent to which the objective medical evidence and supporting explanations presented by a medical source… support his… medical opinion(s).' The consistency analysis looks at how consistent a medical opinion is with evidence from other sources." *Woodard v. Comm'r of Soc. Sec.*, No. 5:22-cv-01728, 2023 U.S. Dist. LEXIS 159761, *5 (N.D. Ohio Sep. 11, 2023). The Social Security regulations define these factors:

1. **Supportability**. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

2. **Consistency.** The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20  C.F.R. § 404.1520c(c)(1)-(2).

### a. Consultative Examination, Dr. Dariush Saghafi, Examining Source

Claimant alleges that the ALJ erred in his evaluation of Dr. Saghafi's opinion as the ALJ failed to address the supportability and consistency of the opinion with record evidence and relied on "a contorted finding of otherwise normal examinations." (ECF No. 9 at 14).

In support of these contentions, Claimant asserts the following,

> The parsing of this more recent evidence and the ALJ's substitution of his own opinion regarding Plaintiff's residual functional capacity constitutes an erroneous evaluation of opinion evidence without properly considering the supportability and consistency of the opinions with the evidentiary record as a whole and results in a finding that is not supported by substantial evidence.

(ECF No. 9 at 14–15). The Commissioner responds that "the ALJ discussed the supportability and consistency of the opinions and PAMFs; focusing on evidence that was submitted in connection with the current application and reasonably concluded that Plaintiff could perform a limited range of light work with non-disabling mental limitations." (ECF No. 10 at 8). This Court agrees with the Commissioner.

Examining Physician, Dr. Saghafi, completed a medical examination on June 21, 2023. (ECF No. 8, PageID #: 391–93). He listed Solomon's alleged symptoms including, back pain stemming from a lifting injury sustained in 2019, pain that Solomon described as "pressing a baseball bat into his back and throbbing," pain when sitting for more than twenty minutes, and pain when standing for greater than twenty minutes. *Id.* at PageID #: 391. Dr. Saghafi observed Claimant's muscle tone and bulk were typical for his age and physique; there were no signs of tremors; he exhibited normal strength (5/5) in all muscle groups; and he demonstrated full range of motion across all joints. *Id.* His deep tendon reflexes (DTRs) were +2/4 bilaterally in both the upper and lower extremities. *Id.* at PageID #: 392–93. Dr. Saghafi also observed a leftward elevation of the scapular region in comparison to the depressed right side due to a leftward thoracic

15

curvature. *Id.* at PageID #: 393. There was also tenderness upon percussion of the mid-thoracic spine, a noticeable depression of the right shoulder while walking, and a neuropathic gait with mild instability, making Claimant prone to falls, although his arm swing remained normal. *Id.* Finally, an x-ray order by Dr. Saghafi indicated a mild S shaped curvature of the thoracolumbar spine, mild intervertebral disc space narrowing at level of L5-S, and no fracture or subluxation. *Id.* at PageID #: 444.

Following his examination, Dr. Saghafi opined that Claimant suffers from chronic back pain that "in part is due at least as likely as not to a probable levothoracic scoliosis." (ECF No. 8, PageID #: 393). Dr. Saghafi also opined that Solomon was able to lift, push and pull sufficiently to be able to perform activities of daily living, bend, walk and stand for 20 minutes, lift up to 20 pounds, understand his environment, communicate satisfactorily, and travel independently. *Id.*

However, the ALJ found Dr. Saghafi's opinion was partially supported by the record. (ECF No. 8, PageID #: 54). He reasoned that although Dr. Saghafi's conclusions were partially supported by the record, Dr. Saghafi did not link his conclusions concerning Claimant's ability to lift 20 pounds, bend, walk, or stand for 20 minutes to specific findings and failed to provide a supporting explanation. *Id.* In his supportability assessment, the ALJ also cited to record evidence reflecting that Claimant had no documented issues with "gait and ambulation, and all records, including the consultative examination consistently document full range of motion, intact strength, intact DTRs, intact coordination, and intact sensation*." Id.* (citing ECF No. 8, Page ID #: 378, 392–93, 422, 428, 434–35)*.* Therefore, the ALJ explicitly discussed the lack of objective medical records and explanations that Dr. Saghafi considered in forming his opinion as required by 20 C.F.R. § 404.1520c(c)(1). Therefore, the supportability factor as to Dr. Saghafi's opinion is met and supported by substantial evidence.

Moreover, the ALJ considered the lack of consistency of Dr. Saghafi's opinion. The consistency factor requires an ALJ to consider the degree to which a medical opinion is consistent with evidence from other medical and nonmedical sources. 20 C.F.R. § 404.1520c(c)(2). The Court reviews the ALJ's determination as a whole. *See Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 851–52 (6th Cir. 2020); *Crum v. Comm'r of Soc. Sec.*, 660 F. App'x 449, 457 (6th Cir. 2016).

> Here, the ALJ found Dr. Saghafi's opinion not consistent with the record evidence:

> This opinion is partially supported, as it is from an examining source who is a specialist in the field relevant to the noted limitations; however [,] … it is inconsistent with the evidence from other medical sources. First, the CE indicated he is able to bend, walk, and stand for 20 minutes, but did not offer any quantification of the total amount of time he is able to do this in an 8-hour day, nor did he explain such restriction, and his statements are too vague to incorporate anything meaningful to the functional assessment in vocationally relevant terms. Further, while tenderness is supported, the other records do not document any issues with gait and ambulation, and all records, including the consultative examination consistently document full range of motion, intact strength, intact DTRs, intact coordination, and intact sensation (see B2F/2-3; B1F/34; B6F/4; B7F/4), and his recent consultation with Neurology notes an entirely normal exam (see B8F/3-4). Therefore, "bend, walk, and stand for 20 min." is unsupported and inconsistent with the objective medical evidence.

(ECF No. 8, PageID #: 54).

Even so, Claimant contends that the ALJ incorrectly relied on a "contorted finding of otherwise normal examinations," the ALJ improperly resorted to "playing doctor," and failed to consider other evidence in the record. (ECF No. 9 at 14). But the ALJ's determination is supported by substantial evidence as he did not rely on limited medical records in making his determination nor did he improperly make medical judgments. Specifically, the ALJ cited to numerous medical records in finding Dr. Saghafi's opinion was inconsistent with the record including; office treatment records from Cynthia Taylor, CNP, dated September 2022, noting full range of motion, joint stability, gait ability, gross/fine movements intact, office treatment records from Dr. Kendrick Bashor, dated October 2023, noting full range of motion in spine, ribs, and pelvis, normal joint

17

stability, gait ability, and muscle strength/tone, and office treatment records from Neurologist Dr. Yazid Alrajeh, dated August 2024, noting normal muscle tone in both upper and lower extremities, no tremors or abnormal movements, normal gait, and arm swing. (ECF No. 8, PageID #: 378, 422, 434–35). Therefore, the ALJ provided a logical bridge between his conclusions, the provider's evidence, and evidence in the record, in concluding that Dr. Saghafi's opinion is inconsistent with evidence of the record. Thus, the consistency factor as to Dr. Saghafi's opinion is satisfied and supported by substantial evidence.

### b. The ALJ's Analysis of the Prior Administrative Medical Findings is Supported by Substantial Evidence.

Substantial evidence also supports the ALJ's analysis of State Agency Physicians, Dr. Sreenivas' and Dr. Das' PAMFs. Dr. Sreenivas completed a Disability Determination and Transmittal dated July 10, 2023. (ECF No. 8, PageID #:  113–22). Dr. Sreenivas adopted the prior ALJ's RFC finding that Claimant could perform sedentary work. *Id.* at PageID #: 119. Subsequently, Dr. Das adopted the same RFC formulation in her Disability Determination and Transmittal dated December 18, 2023. *Id.* at PageID#: 129.

In his written opinion, the ALJ addressed the supportability of both PAMFs,

> These opinions are *supported* by the DDS physicians' specialized programmatic knowledge of Social Security disability regulation, and by the fact that they had access to the claimant's comprehensive, objective, and longitudinal medical records from the relevant timeframe …. However, a restriction to sedentary exertion is *unsupported*, given overall normal exams, consistently showing full range of motion, intact strength, intact DTRs, intact coordination, and intact sensation (see B2F/2-3; B1F/34; B6F/4; B7F/4), and particularly his entirely normal exam at his recent consultation with Neurology (see B8F/3-4).

(ECF No. 8, PageID #: 55) (emphasis added). The ALJ explicitly discussed and cited which objective medical records the Agency Physicians considered in forming their opinions as required by 20 C.F.R. § 404.1520c(c)(1). Therefore, the supportability factor as to PAMFs is met.

18

Moreover, the ALJ considered the lack of consistency of the PAMFs. The consistency factor requires an ALJ to consider the degree to which a medical opinion is consistent with evidence from other medical and nonmedical sources. 20 C.F.R. § 404.1520c(c)(2). The Court reviews the ALJ's determination as a whole. *See Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 851–52 (6th Cir. 2020); *Crum v. Comm'r of Soc. Sec.*, 660 F. App'x 449, 457 (6th Cir. 2016).

The ALJ found the PAMFs to be partially consistent with record evidence,

Their findings are *partially consistent* with the substantial physical evidence, including the overall physical clinical findings and signs, as well as imaging study reports, the claimant's courses and responses to physical treatments, and the claimant's daily and other activities. Consequently, I have found their opinions partially persuasive. Restrictions of occasional operation of foot controls, occasional climbing ramps/stairs, balancing, stooping, kneeling, crouching, and crawling, frequent handling and fingering, frequent work in humidity, wetness, extreme cold, and vibration, and no climbing ladders, ropes or scaffolds, or work at unprotected heights, with moving mechanical parts, or operating a motor vehicle is *consisten*t with complaints or pain and numbness/tingling, with diagnostics showing minimal findings in both APB muscles and right ADM muscle, suggesting developing lesions at the level of carpal tunnels and right Guyon's canal, as well as peripheral neuropathy (B1F/41), and mild intervertebral disc space narrowing at L5-S1 (B3F/1)/mild neuroforaminal stenosis at L5-S1 (B8F/1).

(ECF No. 8, PageID #: 55) (emphasis added). Again, the ALJ compared the PAMFs with medical evidence in the record. Thus, the consistency factor is met. Claimant argues, however, that the decision should be remanded because the ALJ did not adopt the PAMFs. Yet this contention lacks merit. While the ALJ is required to consider the state agency medical consultants' assessments, they "are not required to adopt any prior administrative medical findings." 20 C.F.R. § 416.913a(b)(1); *see Renfro v. Barnhart*, 30 Fed. Appx. 431 (6th Cir. 2002). Thus, the Court will not disturb the ALJ's findings.

Yet Claimant repeatedly requests this Court to disturb the ALJ's findings concerning the aforementioned medical opinions and provides evidence that supports an alternative determination.

(ECF No. 9 at 14) (e.g., citing to the prior ALJ's RFC finding and alternative medical records). Claimant asserts that the ALJ erred by "fail[ing] to recognize the consistency between the prior ALJ's residual functional capacity finding, Dr. Saghafi's identified limitations, and the State Agency consultants' opinions." (ECF No. 9 at 14). Claimant further contends that the ALJ's partial adoption of Dr. Saghafi's opinion and the PAMFs is in error as the ALJ "substitute[s] his own opinion" in formulating the RFC. (ECF No. 9 at 14). Claimant also argues that the "[b]y rejecting all the medical opinions contained in Mr. Solomon's evidentiary record, the ALJ "has succumbed to the temptation to play doctor.'" (ECF No. 9 at 15).

Yet these arguments do not prevail. Claimant's contentions request this Court to conduct de novo review and supersede the ALJ's discretion. Principally, the ALJ is "tasked with interpreting medical opinions in light of the totality of the evidence." *Griffith v. Comm'r of Soc. Sec.*, 582 Fed. Appx. 555, 564 (6th Cir. 2014) (citing 20 C.F.R. § 416.927(b)). Moreover, it is within the ALJ's discretion to weigh the record physician opinions. *See* 42 U.S.C. § 405(g); *see also Cutlip v. Sec'y of Health Hum. Servs.,* 25 F.3d 284, 287 (6th Cir. 1994) (ALJ not bound by treating physicians' opinions, especially where there is substantial evidence to the contrary); *Mullins v. Sec'y of Health Hum. Servs.,* 836 F.2d 980, 984 (6th Cir. 1987) ("claimant's argument rests solely on the weight to be given opposing medical opinions, which is clearly not a basis for our setting aside the ALJ's factual findings"); *Mokbel-Aljani v. Comm'r of Soc. Sec.*, 732 F. App'x 395, 401 (6th Cir. 2018) ("We have previously rejected the argument that a [RFC] determination cannot be supported by substantial evidence unless a physician offers an opinion consistent with that of the ALJ.").

In determining a claimant's RFC, "the ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions of any of the claimant's physicians." *Schmidt*

20

*v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007); *see also Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013) (explaining that requiring an ALJ to base an RFC determination on medical opinions would transfer the statutory responsibility to determine if an individual is under a disability from an ALJ to a medical source). Furthermore, the ALJ's assignment of partial weight to medical opinions is within the ALJ's discretion and is not akin to the ALJ "playing doctor." *Brown v. Saul*, 2020 WL 6136238, at *7 (W.D. Ky. Oct. 19, 2020) (finding the ALJ's RFC was supported by medical opinion and though no opinion was adopted in full, the ALJ explained in detail why she gave partial weight to each assessment such that the ALJ was not "playing doctor" or making her own independent medical findings).

Here, the ALJ properly considered the medical opinions by specifically addressing their supportability and consistency. He then formulated an RFC that limited Claimant to a range of light work and offered substantial evidence to support of his findings. Although the ALJ did not adopt any of the medical opinions in full, the ALJ thoroughly explained how he evaluated each opinion, thus he did not craft his own medical judgments or "play doctor."

Because substantial evidence supports the Commissioner's decision and his analysis of the aforementioned medical opinions, this Court must defer to it, "even if there is substantial evidence that would have supported an opposite conclusion." *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) ("The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion.") (citations omitted). Therefore, this Court will not disturb the ALJ's findings as Claimant fails to offer any argument that overcomes the substantial evidence standard.

3.  **The ALJ's Evaluation of Psychological Consultative Examiner, E.M. Bard, Ph.D.'s Opinion and Mental Prior Administrative Medical Findings are Supported by Substantial Evidence.**

Claimant's final argument concerns the ALJ's evaluation of the of Psychological Consultative Examiner, E.M. Bard, Ph.D., and the mental PAMFs of agency psychologists, Amy S. Johnson, Psy.D. and Courtney Zeune, PsyD. Claimant contends that the "ALJ's finding that Claimant had the [MRFC] to follow simple instructions, but not at a production rate or assembly line pace is premised on legal error and is not supported by substantial evidence…. [as] the ALJ again rejected opinion evidence in favor of his own conclusions." (ECF No. 9 at 16–18). Commissioner responds that the ALJ properly evaluated the supportability and consistency of the of the PAMFs and Dr. Bard's opinion and his findings are supported by substantial evidence. (ECF No. 10 at 13–16). The Court agrees with the Commissioner for the reasons set forth below.

Psychological Consultative Examiner, E.M. Bard, Ph.D. performed a psychological evaluation on July 10, 2023. (ECF No. 8, PageID #: 402–07). Dr. Bard opined that Claimant had no limitations in understanding, remembering, and carrying out instructions, is below average in sustaining concentration, persistence in work related activities at a reasonable pace, and had no significant difficulty interacting with supervisory staff or coworkers when employed, and appears substandard in dealing with normal work pressures in a competitive work setting. *Id.* at PageID #: 407.

In his written determination, the ALJ addressed the supportability and lack of consistency of Dr. Bard's opinion. He found Dr. Bard's opinion supported by the record, but not persuasive nor consistent,

> This opinion is supported, as it is from an examining source who is a specialist in the field relevant to the noted limitations and is supported by documented exam findings and supporting explanation. ; however, it is not persuasive, as the CE did

not offer any quantification of the frequency with which or the degree to which claimant's ability to make occupational, personal, and social adjustments is diminished, only indicating that he is "below average" with regard to concentration, persistence, and pace, and "substandard" with regard to dealing with normal work pressures, and these statements are too vague to incorporate anything meaningful to the functional assessment in vocationally relevant terms.

(ECF No. 8, PageID #: 55). The ALJ also noted the record reflected a lack of mental health treatment including medications or therapy. *Id.* The ALJ then concluded that the evidence supported a restriction to simple instructions and no production rate pace. *Id.* Since the ALJ addressed the supportability and lack of consistency of Dr. Bard's opinion, he complied with the requirements of 20 C.F.R. § 404.1520c(c)(1)-(2), and his evaluation of Dr. Bard's opinion is supported by substantial evidence.

The ALJ also properly evaluated the mental PAMFs of agency psychologists, Amy S. Johnson, Psy.D. and Courtney Zeune, PsyD. At the initial level, Dr. Johnson completed a psychological consultation in which she opined that Claimant is capable of low stress work related tasks. (ECF No. 8, PageID #: 117). At the reconsideration level, Dr. Zeune opined that Claimant does various activities of daily living where physically able and "interact with the general public for basic information exchange on occasion." *Id.* at PageID #: 127.

In his determination, the ALJ addressed the supportability and consistency of both PAMFs. He found the opinions supported because the agency psychologists had specialized, programmatic knowledge of the disability regulations and access to Claimant's complete medical records as they existed at the times of their reviews. (ECF No. 8, PageID #: 56). And the ALJ explained that the PAMFs were unpersuasive because they were either internally inconsistent, inconsistent with the medical evidence, vague, and not in vocationally relevant terms. *Id.* Specifically, the ALJ noted that Dr. Johnson did not provide an explanation defining "low stress" and Dr. Zeune's assessment that Claimant could "interact with the general public for basic information exchange on occasion"

23

was inconsistent with Dr. Bard's finding that Claimant had "no limitations" interacting with others, as well as evidence that he lived with his grandmother and brother, grocery shopped independently and exhibited no behavioral issues during exams. *Id.* Therefore, the ALJ's conclusion that Claimant was limited to simple instructions and no assembly line/production rate pace was supported by substantial evidence and will not be disturbed.

Claimant argues that the ALJ improperly rejected the opinions and PAMFs because he found them supported by the record. (ECF No. 9 at 17). As discussed above, while an ALJ is required to consider the state agency medical consultants' assessments, they "are not required to adopt any prior administrative medical findings." 20 C.F.R. § 416.913a(b)(1); *see Renfro*, 30 Fed. Appx. at 436. Here, as discussed above, the ALJ considered the PAMFs and found them supported but not consistent and these findings are supported by substantial evidence. Thus, the Court will not disturb the ALJ's findings.

## VI. Conclusion

Based on the foregoing, the Court OVERRULES Solomon's Statement of Errors and AFFIRMS the Commissioner's decision.

Dated: May 13, 2026

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE

24